ILLINOIS CENTRAL R. R. Co. v. REDMOND.

[81 South. 115, Division A, No. 20474.]

1. RAILROADS. *Passengers. Separate coach law.*
   Under our Separate Coach Law, Code 1906, sections 4059-4060, it is not required that the accommodations furnished to passengers of one race be identical with those furnished to passengers of the other, but they do require that the accommodations (which, of course, include not only those things which are necessary for but also such as add to comfort and convenience) provided for passengers of the one race shall be equal to those provided for passengers of the other race, from which it necessarily follows that, if separate toilets are provided for the sexes of one race, separate toilets must also be provided for the sexes of the other, and if a place in which to smoke is provided for one race, such a place must be also provided for the other.

2. TRIAL. *Instructions. Requested instructions.*
   There is no error in a court refusing an instruction where it is substantially covered by an instruction already given.

3. CARRIERS. *Duty to furnish seats. Defenses.*
   In a suit for damages against a carrier for failure to provide plaintiff with a seat, the defense that such seat could not be provided because of a sudden and unusual influx of passengers, is an affirmative defense and in order to be availed of, must be specially pleaded.

4. CONSTITUTIONAL LAW. *Separate coach law. Interstate commerce. Equal protection of the laws.*
   The Separate Coach Law, Code 1906, sections 4059-4060, does not violate either the commerce clause of, or the fourteenth amendment to, the Federal Constitution.

APPEAL from the chancery court of Hinds county.

HON. LAMAR F. EASTERLING, Chancellor.

Attachment in Chancery, under Code 1906, section 537 (Hemingway's Code, section 294), in which A. M. Redmond was complainant and the Illinois Central Railroad Company the principal defendant. From a decree for complainant, defendant appeals.

The statutes of Tennessee involved in this case are as follows:

"3073 (4927c) 2363. Seating of Passengers.—It shall be the duty of the conductor to see that no passenger occupies more room than he pays for, and that each passenger is provided with a seat as long as one remains vacant on his train. (Id. section 5.)

"3074. Separate Coaches or Apartments for White and Colored Races. —All railroads carrying passengers in the state (other than street railroads) shall provide equal but separate accommodations for the white and colored races, by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition, so as to secure separate accommodations; but any person may be permitted to take a nurse in the car or compartment set aside for such persons. This law shall not apply to mixed

and freight trains which only carry one passenger or combination passenger and baggage car, but, in such cases, the one passenger car so carried shall always be partitioned into apartments, one apartment for the whites and one for the colored.  (1891, ch. 52, section 1.)

"3075.  Conductors must Separate Passengers.— The conductors of such passenger trains shall have power, and are hereby required, to assign to the car or compartments of the car, when it is divided by a partition, used for the race to which such passengers belong, and, should any passenger refuse to occupy the car to which he or she is assigned by such conductor, said conductor shall have power to refuse to carry such passenger on his train; and, for such re- fusal, neither he nor the railroad company shall be liable for any damages in any court of this state. (Id. section 2.)"

Ann. Code of Tennessee 1917.

The statutes of the state of Kentucky involved in this case are as follows:

"795.  Separate Coaches or Compartments for White and Colored Passengers.—Any railroad company or corporation, person or persons, running or otherwise operating railroad cars or coaches, by steam or other- wise, on any railroad line or track within this state, and all railroad companies, person or persons,· doing business in this state, whether upon lines of railroad owned in part or whole, or leased by them; and all railroad companies, person or persons, operating railroad lines that may hereafter be built under ex- isting charters, or charters that may hereafter be granted in this state; and all foreign corporations, compaines, person or persons, organized under char- ters granted, or that may be hereafter granted, by any other state, who may be now, or may hereafter be, engaged in running or operating any of the railroads of this state, either in part or whole, either in their

own name or that of others, are hereby required to
furnish separate coaches or cars for the travel or
transportation of the white and colored passengers on
their respective lines of railroad. Each compartment
of a coach divided by a good and substantial wooden
partition, with a door therein, shall be deemed a sep-
arate coach within the meaning of this act, and each
separate coach or compartment shall bear in some
conspicuous place appropriate words in plain letters
indicating the race for which it is set apart.   (This
and secs. 796–801 is an act of May 24, 1892.)

"796. No Discrimination in Coaches or Compart-
ments.—That the railroad companies, person or per-
sons, shall make no difference or discrimination in the
quality, convenience or accommodations in the cars
or coaches or partitions set apart for white and color-
ed passengers."

"798. Jurisdiction of Circuit Courts.—That all cir-
cuit courts in which railroads are operated in this
state shall have complete jurisdiction over such of-
fenses.

"799. Duties and Powers of Conductors of Trains.—
The conductors or managers on all railroads shall have
power, and are hereby required, to assign to each
white or colored passenger his or her respective car
or coach or compartment, and should any passenger
refuse to occupy. the car, coach or compartment to
which he or she may be assigned by the conductor or
manager, said conductor or manager shall have the
right to refuse to carry such passenger on his train,
and may put such passenger off the train.   And for
such refusal and putting off the train neither the
manager, conductor, nor railroad company shall be
liable for damages in any court.

"800. Penalty Imposed on Conductors for Violation
of Duty.—That any conductor or manager on any rail-
road who shall fail or refuse to carry out the pro-
visions of section 799 shall, upon conviction, be fined

not less than fifty nor more than one hundred dollars for each offense.

"801. Persons to Whom Act Not Applicable.—The provisions of this act shall not apply to employes of railroads or persons employed as nurses, or officers in charge of prisoners [nor shall the same apply to the transportation of passengers in any caboose car attached to a freight train]. (Words in brackets added by amendment of March 15, 1894:)"

Ky. St. 1915.

The statutes of the state of Mississippi involved in this case are as follows:

"4059 (3562). Equal but Separate Accommodations for the Races. (Laws 1904, c. 99.)—Every railroad carrying passengers in this state shall provide equal but separate accommodations for the white and colored races by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition to secure separate accommodations; and the conductor of such passenger train shall have power, and is required, to assign each passenger to the car, or the compartment of a car, used for the race to which such passenger belongs; and should any passenger refuse to occupy the car to which he or she is assigned by the conductor, the conductor shall have power to refuse to carry such passenger on the train, and for such refusal neither he nor the railroad company shall be liable for damages in any court."

Code 1906.

*F. M. West, Wells, May & Sanders,* for appellant.

Appellee confuses equality of accommouations with identity of accommodations. The separate coach laws of the states of Kentucky, Tennessee and Mississippi are substantially the same. They provide for separate and equal accommodations for the two races, and the con-

ductor is required to designate the cars in which they shall ride. There is a radical distinction between equality of accommodation and identity of accommodation. Appellee is basing his cause upon a mistaken premise of identity, rather than equality, of accommodation. We think we can successfully maintain the wide distinction and dissimilarity.

In addition, the appellee contends a violation of the law because of the alleged failure to furnish him a seat between Cairo and Memphis. The conductor testified without contradiction that he had an unusually large number of passengers on the morning in question, and that, because of that fact he removed the white passengers from the smoking compartment and turned the whole car over to the negroes. Appellee denies that the whole car was set apart to negro passengers.

The trial court declined to grant appellant's instruction No. 8 as follows: "The court instructs the jury for the defendant that if you believe from the evidence that there was a sudden and unusual influx of passengers, so that it was impractical for the defendant to furnish the complainant with a seat from Cairo to Memphis, you will find for the defendant as to all damages claimed by reason of not having been furnished with a seat between those points."

The refusal to grant that instruction is reversible error. *Railway Co.* v. *Patterson,* 69 Miss. 421,

We have been unable to find any decisions of this court undertaking to define the kind of accommodations that shall be furnished. In the absence of such a decision, therefore, we must look to the language of the statute itself, and to the decisions of the courts of other states having similar laws. We maintain that the statute unmistakably points out just what the law-making body had in mind.

The Separation of the Races. Notice: Every railroad company carrying passengers in this state shall

provide equal (not identical) but separate accommodations for the white and colored races by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition to secure separate accommodations.

In other words the carrier shall provide for equal and separate accommodations by providing two or more passenger cars (if the amount of travel requires) or by dividing the car, or cars, into two compartments by a partition to secure separate accommodations. It is perfectly clear that the railroad company may use either one of the two means; either by providing two or more passenger cars (one for each race—if the business requires), or by dividing the car or cars into two compartments by a partition to secure separate accommodations. The proof shows that not over twenty-five per cent. of the passengers carried were negroes, and that the equipment carried on the occasions in question was usually sufficient. The legislature had in mind the separation of the races, rather than the character and quality of the accommodations to be supplied; and provided that the carrier might use either of the methods suggested. In the case at bar the appellant divided the car into two compartments by a partition so that separate, not identical, accommodations might be had. There is nothing in the statute requiring that the accommodations shall be identical.

There is nothing therein requiring that smoking accommodations shall be furnished to either race; nor is there anything therein requiring that toilet facilities shall be provided. (The common law would require, however, reasonable accommodations in the latter respect.) There is no provision that observation cars shall be had nor chair cars, nor any of the modern conveniences of railway travel. Diners are not provided for, nor pullmans, nor reading rooms. The thing aimed at is separation of the races. Identical accommoda-

tions are nowhere provided for. Equal does not mean identical accommodations.

Since the Mississippi separate coach statute has not been construed by this court, let us see what the courts of Kentucky and Tennessee have had to say upon similar statutes.

Supporting our contention that the law-making body had in mind the separation of the races, rather than character of accommodation, we would refer the court to the case of: *Commonwealth* v. *L. & N. R. R. Co.,* 87 S. W. 262; *Louisville & N. R. Co.* v. *Commonwealth,* 170 S. W. 162; *L. H. & St. L. Ry. Co.* v. *Commonwealth,* 144 Ky. 625, 139 S. W. 913; *McCabe* v. *A. T. & S. F. Ry. Co.,* 186 Fed. 966, 109 C. C. A. 110; *Shelton et al.* v. *C. R. I. & P. R. Co.,* 201 S. W. 520.

A statute when possible should not be given a construction that would make it not sensible or that would lead to manifest inconvenience, so serious as to work injustice. *Maxey* v. *Powers,* 117 Tenn. 381, 101 S. W. 181; *Hall* v. *State,* 124 Tenn. 235, 137 S. W. 500.

We say that when the carrier has supplied its passenger with reasonable accommodations, it has done all that is required of it. The law contemplates a separation of the two races. Of course that does not mean that the railroad company may so discriminate against the colored man as to practically debar him from traveling on its trains; but it does contemplate that he shall be reasonably well accommodated. We say that the facts in this case show that not only was the statutory law of the three states complied with, but the common law was likewise obeyed; for it is shown that the equipment was sufficient for the ordinary use of colored travel.

The Instructions. The trial court did not permit the appellant to place its case before the jury. Instruction No. 1 given for appellee is as follows: "The court instructs the jury to find for the plaintiff in this case for that part of the journey on the line of the I. C. R.

R. within the states of Tennessee and Mississippi and assess his damages at such sum as you may believe from the evidence he is fairly entitled to for the injuries, if any, he sustained as a result of the defendant failing to give the plaintiff a seat and provide smoking and toilet accommodations while in the state of Tennessee and for failure to furnish the plaintiff equal toilet and smoking facilities to that furnished white passengers on that part of the journey from Holly Springs to Jackson, Mississippi."

The evidence of the appellee as to his being confined in the colored compartment between Cairo and Memphis was squarely contradicted by the conductor in charge of the train, the latter testifying that he had turned the smoking compartment, ordinarily used for whites, over to the negroes, and that on the occasion in question the train was unusually crowded and that several white people were standing up all over the train. The appellant asked an instruction that this feature of the case be put to the jury by appropriate instruction (appellant's instruction No. 8 already quoted), but the court denied the request. Appellee's instruction No. 1 was a peremptory charge to the jury to find against the appellant, and is alone reversible error. The court will notice that the jury was charged to find for the appellee because he was not provided with a seat and because he was not provided with toilet and smoking facilities in Tennessee and Mississippi. The only part of his journey made in Mississippi was between Holly Springs and Jackson, and he testified that there were not over eight women in the compartment, and that he had ample opportunity of using the toilet therein, but that because it was marked "Women" he declined to make use of it. The conductor in charge of the train between those points testified that no request was made of him by any colored passenger for a place to smoke. The appellee denied that. A square conflict of testimony was thus presented, yet the trial

court ignored the conflict, and directed the jury to find against the appellant upon that point.

That was, also, reversible error. The court below seems to have gone off on the idea that identical, rather than equality of accommodations was required by the law. The effect of that instruction was to tell the jury that the negro passenger should have the same kind of a car, and just as many, as furnished the white passengers, and that regardless of the number of white and colored passengers carried, or of the adequacy of accommodation.

The appellant requested the following instructions, all of which were refused by the court:

No. 2. "The court instructs the jury for the defendant that the accommodations furnished the complainant in the state of Kentucky were a substantial compliance with the statutory requirements of that state as to toilet and smoking facilities."

No. 3. "The court instructs the jury for the defendant that the accommodations furnished the complainant in the state of Tennessee were a substantial compliance with the statutory requirements of that state as to toilet and smoking facilities."

No. 4. "The court instructs the jury for the defendant that the accommodations furnished the complainant in the state of Mississippi were a substantial compliance with the statutory requirements of that state as to toilet and smoking facilities."

We think that the trial court should have granted each of those instructions.

Constitutionality of the Statutes. The separate coach laws of Kentucky, Tennessee and Mississippi have been held to be constitutional in those states. *Ohio Valley R. R. Co.* v. *Lander,* 47 S. W. (Ky.) 344; *Quin* v. *L. & N. R. R. Co.,* 32 S. W. (Ky.) 742; *L. & N. R. R. Co.* v. *Commonwealth,* 37 S. W. (Ky.) 79. In that case the passengers were also intra-state. *M. C. & O. R. R.* v. *Commonwealth,* 51 S. W. (Ky.) 160.

In the Mississippi case of *L. & N. O. & T. Ry.* v. *State*, 66 Miss. 662, this court held that the Mississippi statute, in so far as it applied to passengers travelling wholly within the state, was not violative of the commerce clause of the Federal Constitution, expressly not deciding as to the legality of the statute when applied to interstate passengers. The supreme court of the United States affirmed that decision: *L. & N. O. & T. Ry. Co.* v. *State of Mississippi*, 133 U. S. 587, 33 Law Ed. 784.

In the case of *Hall* v. *Decuir*, 95 U. S. 485, Law Ed. 547, the supreme court of the United States held that a statute of Louisiana, requiring all persons engaged within that state in the business of common carriers of passengers to admit all persons traveling on the conveyance employed in the business to equal privileges in all parts of the conveyance without discrimination on account of race or color, was void as being a regulation of interstate commerce. The passenger complaining was traveling wholly within the state.

This court, in the case of *A. & V. Ry. Co.* v. *Morris*, 103 Miss. 511, held that the separate coach law applied to sleeping, or Pullman cars, and that the passengers who traveled from a point in this state to a point without in the only Pullman on the train in which several negro men were also passengers, was entitled to damages and further, that the separate coach law was not an interference with interstate commerce.

The Kentucky court of appeals in the case of *Commonwealth* v. *I. C. R. R. Co.*, 32 L. R. A. (N. S.) 51, held that the separate coach law of that state did not apply to Pullman or sleeping cars; a decision directly conflicting with the Morris case on that point. We respectfully submit, however, that the decision of this court in the Morris case is wrong, and should be overruled for the separate coach laws of this state are, in our judgment, unconstitutional and void as interference with commerce between the states, and in con-

flict with the constitutional provision of the Federal Constitution above set out.

Separate coach laws have been before the supreme court of the United States several times, but that court has never yet decided the exact question here presented. A decision has always been rendered upon some other point. That is significant, we think.

The following decisions of the supreme court of the United States involved the construction and application of the separate coach laws, but the court will notice how carefully has that great court avoided deciding the exact question here presented. *Chiles* v. *C. & O. Ry. Co.* 218 U. S. 71, 54 Law. Ed. 936; *Hall* v. *Decuir, supra; McCabe* v. *A. T. & S. F. R. R. Co.,* 235 U. S. 151, 59 Law. Ed. 169.

Other decisions of the supreme court of the United States upon the construction and application of separate coach laws, with care not to decide the exact point here presented, are: *Plessy* v. *Ferguson,* 163 U. S. 547, 41 Law Ed. 256; *C. & O. Ry. Co.* v. *Commonwealth of Ky.,* 179 U. S. 388, 45 Law. Ed. 244; Minnesota rate cases, 230 U. S. 352, 57 Law Ed. 1511; *Hall* v. *Decuir, supra; C. C. C. & St. L. R. R. Co.* v. *Illinois,* 177 U. S. 514, 44 Law Ed. 868; *Covington & Co. Bridge Co.* v. *Kentucky,* 154 U. S. 204, 38 L. Ed. 962; *L. & N. R. R. Co.* v. *Eubank,* 184 U. S. 27, 46 Law Ed. 416.

This court in the Morris case held that the law was within the police power of the state, but even under that theory, we say the statutes in controversy are unreasonable, and hence an unlawful burden upon interstate commerce. *Miss. R. Com.* v. *I. C. R. R. Co.,* 203 U. S. 335, 51 Law Ed. 209, and the many other authorities cited by plaintiff in error in the case of *South Covington & Cin. Street Ry. Co.* v. *Covington,* 235 U. S. 537, 59 Law Ed. 350.

We respectfully submit, therefore: First, if the separate coach laws be valid, the appellee has made out no case thereunder, and the refusal of the trial

court to instruct the jury accordingly is reversible
error; second, the jury should have been allowed to
say whether the appellee had been discriminated against
in the matter of not having been provided with a seat
between Cairo and Memphis; third, the separate
coach laws violate the commerce clause of the Federal
Constitution, and are void; fourth, Congress having
taken complete charge of interstate commerce, the
statutes are for that reason invalid when applied to
interstate commerce, and to the facts of this case.

We respectfully submit, therefore, that the case
should be reversed and remanded.

*George Butler,* for appellee.

The questions involved in this appeal are:
1. Whether the appellant discharged its duty to ap-
pellee in forcing him to stand, especially for that part
of the journey in Tennessee.
2. It did not comply with the separate coach laws
of Tennessee and Mississippi in that it furnished white
passengers separate smoking and toilet facilities for
that part of the journey in the state of Tennessee and
Mississippi and did not furnish the same to appellee.
3. Whether the jury was authorized, under the facts
shown, to find that appellant did not furnish equal
seating and smoking accommodations to that furnished
white passengers on that part of the journey in Ken-
tucky, and,
4. Whether or not the defendant properly heated its
car on that part of the journey between Holly Springs
and Jackson etc., *L. & N. Railroad Company* v. *Com-
monwealth,* 170 S. W. 162, L. R. A. 1915B, 216; *A. &
V. Railroad Company* v. *Morris,* 103 Miss. 511; *Wes
Chester R. R. Co.* v. *Myers,* 55 Pa. 209; *McGinn* v.
*Williams* (C. C. C. Mo.), 5 General Digest 350, 22 Fed.
843.

In *Chiles* v. *C. & O. Railroad,* 11 L. R. A. (N. S.) 268, affirmed 218 U. S. 71, 54 Law Ed. 937, it is held that the colored man who conducts himself properly and holds a first class ticket is entitled to demand that the carrier shall furnish him carrriage substantially similar in quality, convenience and accommodations to that furnished to white persons for a similar ticket. That the regulations for separation must not only be reasonable, in that it conduces to the general comfort of the passengers, but it must not deny equal convenience and opportunities to all who pay the same fare; and quotes with approval from the Sue Case above cited.

In *Murphy* v. *Western R. R. Co.,* 23 Fed. 637, it is said that a colored passenger has no right to complain if a car in which he is directed to take a seat is comfortable and convenient in its equipment as others of like character. *Hall* v. *Decuir,* 95 U. S. 505, a case involving the right of carriers to separate white and colored passengers in substance held that the carrier, so long as the convenience and accommodations furnished were substantially equal, had the right to adopt such rules.

As to whether or not there is a discrimination shown in this case; suppose the stipulation was reversed. Suppose the appellee was a white passenger, forced to be without smoking accommodations or separate toilet facilities while such separate accommodations and facilities were furnished negro passengers on the train. Would it then be said by distinguished counsel opposing that, under such circumstances there was no violation of the statute?

We imagine that if white passengers were forced to submit to such inferior accommodations, that an incipient revolution would at once break out against the carriers or the railroad administration.

It is idle to contend that there was no discrimination in this case, or that the accommodations furnished appellee and white passengers were equal, in comfort or conveniences, or to imply that appellee and his race were not possessed of the same sensibilities, etc. as the white race.

Appellant frankly admits that the issue as to whether or not the car was properly heated was properly submitted to the jury by appellee's second instruction.

Appellant's fifth and sixth instructions were properly refused because while the law does not impose upon the carrier, the duty to furnish toilet and smoking facilities; if the same are furnished to one race, they must be furnished to both.

It was not error to refuse appellant's seventh instruction. This instruction is fully covered by appellant's first instruction and moreover is in conflict with appellee's instructions in that it submits to the jury questions which the court had decided preemptorily.

We do not care to enter into any discussion of the constitutionality of this act. That question has been too long settled to require discussion at this point.

As conclusively shown, appellee has been badly treated. Appellant did not comply with the law intended to apply equally to the members of each race and should congratulate itself upon the amount of the verdict rendered against it. If a white man had been suing under similar circumstances, it is but reasonable to suppose that the verdict would have been greatly in excess of the amount allowed in this case. That appellee sustained substantial damages is not denied, and we respectfully submit that this case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an attachment in chancery under section 537, Code of 1906 (Hemingway's Code, section 294), in which

the appellee was complainant in the court below, and appellant was the principal defendant.

Appellee is a negro, and the ground of his complaint is that, while a passenger on one of the appellant's trains, he was not provided with a seat; the coach in which he traveled was not properly heated; no place was provided for the members of his race to smoke; and the coach set apart for his race and in which he traveled was equipped with only one toilet which was marked "Women," when it should have been equipped with two, one for each of the sexes, resulting in his being deprived of smoking and toilet facilities, and because of all of which he became ill, and remained so for some days. The cause was submitted to the jury, which returned a verdict for the appellee, and there was a decree accordingly. It appears from the bill and evidence in support thereof that in September, 1917, the appellee purchased a ticket over the appellant's railroad from Jackson, Miss., to St. Louis, Mo., and return, and traveled on the return portion thereof from St. Louis by way of Cairo, Ill., to Memphis, Tenn., from which place he went to Holly Springs over another railroad, and from there to Jackson, Miss., over the appellant's railroad. In making the trip he traveled across the states of Kentucky and Tennessee and into the state of Mississippi, the statutes of all of which provide in varying language that railroads carrying passengers shall provide equal, but separate, accomodations for the white and colored races, the pertinent portions of which will be set out by the reporter. One of the coaches attached to each of the trains of appellant on which the appellee traveled was divided by a partition across the center thereof, one of the compartments thus made being set apart for the colored race, and the other for a smoking compartment for the white race, each compartment being equipped with one toilet, the other coaches set apart for the white race being each equipped with two toilets, one for each of the sexes, and so

marked. No smoker compartment was provided for the colored race.

When the train on which the appellee traveled from St. Louis to Memphis crossed into Kentucky at Cairo, Ill., he, along with other passengers of his race thereon, was caused by the conductor to enter and thereafter to travel in the coach set apart for colored passengers. According to the evidence of the conductor, there were more colored passengers than the compartment set apart for them could accomodate, so that he caused the white passengers to vacate the smoking compartment, turned the whole coach over to the colored passengers, and thereby deprived the white passengers of a place in which to smoke.

According to the evidence of the appellee, he and the other passengers of his race were confined to the colored compartment, which was so crowded that he was unable to obtain a seat, and that the conductor, although requested so to do, refused to provide him with one, resulting in his being compelled to stand from Cairo to Memphis which portion of the journey consumed several hours. The conductor denied that any request for a seat was made to him by appellee.

The toilets of the colored compartments in each of the appellant's trains on which appellee traveled were marked "Women," and, according to the appellee, were in frequent use throughout his journey by the colored passengers of that sex, and he was told by each of the conductors when appealed to by him that he would have to use the one toilet or none at all, and this he preferred not to and did not do. He also testified that both conductors were requested by him to provide him with a place to smoke, but declined to do so. Both of these statements were denied by each conductor.

The coach in which appellee traveled from Holly Springs to Jackson was not heated, and the evidence was conflicting as to the necessity therefor, and also as

to any request to have the heat turned on having been made of the conductor by the appellee.

The separate coach laws here under consideration do not require that the accomodations furnished to passengers of the one race be identical with those furnished to passengers of the other, but they do require in plain and unambiguous language that the accomodations (which, of course, include not only those things which are necessary for, but also such as add to comfort and convenience) provided for passengers of the one race shall be equal to those provided for passengers of the other race, from which it necessarily follows that, if separate toilets are provided for the sexes of the one race, separate toilets must also be provided for the sexes of the other, and if a place in which to smoke is provided for the one race, such a place must also be provided for the other.

It may be that, as an original proposition, the appellant was under no duty to equip its cars with smoking compartments and separate toilets for the sexes, as to which we express no opinion, but, be that as it may, when it so equipped its cars set apart for its white passengers, and thereby added to their comfort and convenience, it became its duty under these statutes to so equip its cars set apart for colored passengers. *"Ita lex scripta est."*

The Court of Appeals of Kentucky, in *Railroad Co. v. Commonwealth*, 160 Ky. 769, 170 S. W. 162, Ann. Cas. 1916A, 405, in an opinion which does not commend itself to our approval, has held that the statute of that state is not violated by the railroad equipping its cars set apart for colored passengers with only one toilet, while those set apart for white passengers are equipped with two, one for each of the sexes, so that the appellee cannot, and by his instructions did not attempt to, recover on that ground, in so far as his journey through the state of Kentucky is concerned.

From the foregoing views it follows that the court below committed no error in refusing the appellant's first, second, third, fourth, fifth, and sixth instructions. Its seventh refused instruction is unobjectionable, but was substantially covered by another that was granted, and its eighth instruction was properly refused for the reason that the defense that it was impossible for the appellant to furnish the appellee with a seat from Cairo to Memphis because of a sudden and unusual influx of passengers is an affirmative one and should have been, but was not, specially pleaded; the answer of the appellant containing not even the remotest reference thereto.

The statute here in question does not violate either the commerce clause of, or the Fourteenth Amendment to, the federal Constitution, as the courts of the states of Kentucky, Tennessee, and Mississippi have heretofore several times decided. There is no merit in the other assignments of error.

*Affirmed.*